# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPID DIVISION

| | |
|---|---|
| TAMMY I. WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 16-CV-0128-LTS<br><br>**REPORT AND RECOMMENDATION** |

_____

    Plaintiff Tammy Williams seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DI) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Williams argues that the administrative law judge (ALJ), Tela L. Gatewood, erred in determining residual functioning capacity (RFC) because she did not give sufficient weight to the RFC opinion of Williams' treating physician and because no medical evidence supports her RFC determination. I recommend **affirming** the ALJ's decision.

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

## I. BACKGROUND[2]

Williams suffers from problems with her vocal cords, back, and mental health. AR 15.[3] She also has a history of alcohol abuse, which caused her to be hospitalized for liver disease in November 2010. AR 15, 66. She has not worked since. AR 66.

In January 2011, Williams began seeing primary care physician Dr. Gina Perri on a monthly basis. AR 794. Dr. Perri referred Williams to a specialist to evaluate her vocal cord issues, and Williams had surgeries on her vocal cords in June 2011 and June 2012. AR 1155-56, 1481, 1484. Williams first complained of back pain to Dr. Perri in September 2011, stating that her back had been hurting for a few months and that Lortab, a prescription opioid that she took after vocal cord surgery, helped her pain. AR 743. With regard to mental health treatment, Williams first saw psychiatrist Dr. Mark Mittauer in October 2010, and beginning in January 2012, she met with Dr. Mittauer consistently every few months. AR 529, 834-37, 1454-59, 1489, 1508, 1563.

Williams filed applications for DI and SSI benefits on April 5, 2012, alleging disability beginning on November 20, 2010. AR 310, 317. Both applications were denied initially in June 2012 and on reconsideration in August 2012. AR 124, 126-139, 143-159, 160-176. In connection with those applications, state agency consultants reviewed treatment notes and evaluated Williams' RFC, or "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

Williams requested a hearing before an ALJ. AR 214. On November 13, 2013, the ALJ held a video hearing at which Williams and a vocational expert testified. AR 11, 57-58. After the hearing, the ALJ issued a written opinion following the familiar

---

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 11).

[3] "AR" refers to the administrative record below.

five-step process outlined in the regulations.[4] AR 11-32. The ALJ determined that Williams suffers from the following severe impairments: vocal cord dysfunction, anxiety, depression, degenerative disc disease of the lumbosacral spine, and a history of alcohol abuse. AR 15. To evaluate whether Williams' impairments prevented her from performing her past work or other work, the ALJ determined Williams' RFC:

> The claimant can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours in a workday. She can sit, with normal breaks, for a total of six hours in a workday. The claimant can balance, crouch, stoop, kneel, crawl, and climb occasionally. The claimant can perform simple tasks. She can work with co-workers and supervisors on an incidental basis. She cannot work with the public. She cannot perform fast-paced work. The claimant is not able to do telephone work. She should not manage money or drive.

AR 18. The ALJ found Williams "unreliable as a source of information regarding her functional capacity," noting, among other things, several instances in which she had not been truthful to her medical providers. AR 21-27. The ALJ considered three RFC opinions from Williams' primary care physician, Dr. Perri, but did not assign them much weight. AR 27-28, 1263-64, 1294-95, 1568-1571. The ALJ assigned some weight to the mental RFC opinion of David Engelstad, a certified school psychologist who examined Williams in November 2011 in connection with a prior application for benefits.

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

AR 21, 821-826. The ALJ gave significant weight to the state agency consultants' opinions. AR 29, 126-139, 143-159, 160-176.

The ALJ found that Williams could not perform her past work but could do other work and thus, that she was not disabled. AR 30-32. Williams appealed the ALJ's decision, and the Appeals Council denied her request for review on May 6, 2016. AR 1-3. The ALJ's decision is therefore the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481 (2016). Williams filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 3). *See* 20 C.F.R. § 422.210(c). The parties briefed the issues (Docs. 12, 13), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Williams challenges only the ALJ's RFC determination, arguing that the ALJ should have given more weight to the RFC opinions of Dr. Perri and that some medical evidence does not support the resulting RFC determination. Keeping the substantial-evidence standard in mind, I address each of Williams' arguments in turn.

4

### A. *Weight Given to Medical Opinions*

Williams argues that the ALJ erred in assigning little weight to the RFC opinions of Dr. Perri, a treating source. Three RFC opinions from Dr. Perri are at issue.

In a letter dated August 30, 2012, Dr. Perri opined that due to her back pain, Williams cannot carry more than ten pounds, walk more than half a block, bend, stoop, kneel, or crawl. AR 1263. Because of her vocal cord problems, Williams speaks with a chronic hoarse voice. *Id.* With regard to mental RFC, Dr. Perri found that Williams' anxiety limits the amount of stress she can handle. *Id.* Dr. Perri opined that Williams' mental impairments, limited education, and pain combine so that she is unable "to follow instructions all that well." *Id.* Dr. Perri did not think that Williams would be able to interact with other people, whether coworkers or the general public. *Id.* Dr. Perri noted that generally, Williams makes poor life choices and lacks good judgment. *Id.*[5] She ultimately opined that Williams is never "going to be able to return to the workforce." *Id.*

On June 10, 2013, Dr. Perri filled out a short state-agency form evaluating Williams' RFC. AR 1294-95. Consistent with her letter of August 30, 2012, she opined that Williams cannot lift more than ten pounds, bend, stoop, or handle high-stress environments. AR 1295. She also found that Williams cannot push more than ten pounds due to her back pain and that she should not engage in "repetitive lifting, . . . twisting, [or] climbing." *Id.* She opined that Williams is able to care for her own children, but not other children in a commercial daycare setting. *Id.* She did not think that Williams could work, undergo training, or take classes. *Id.*

---

[5] Dr. Perri also opined that Williams cannot be exposed to dust, fumes, or extreme temperatures because of her asthma. AR 1263, 1295. The ALJ determined that Williams does not suffer from asthma (AR 15), a finding unchallenged by Williams in this appeal.

5

At the request of Williams' counsel, Dr. Perri filled out another RFC form on October 17, 2013. AR 1568-1571. She opined that Williams could not walk more than one block or sit or stand longer than five minutes. AR 1569. In an eight-hour day, she found that Williams could sit and "[s]tand/walk" for less than two hours each. AR 1570. She opined that Williams needed to be able to shift positions at will, noting that Williams "[i]s constantly up and down." *Id.* She found that Williams could rarely lift less than ten pounds and could never lift ten pounds or more. *Id.* She stated that Williams could rarely twist, stoop, crouch, or climb stairs and that she could never climb ladders. AR 1571. She marked that Williams did not have "significant limitations" with reaching, handling, and fingering, but she also found that Williams could only use her arms for reaching (including overhead reaching) fifteen percent of the time in an eight-hour day. *Id.* With regard to Williams' mental impairments, she noted that Williams' anxiety precluded her from performing even a low-stress job. AR 1569. She handwrote at the end of the form that Williams "cannot think rationally," is constantly talking and distracted, and is unable to "follow . . . through." AR 1571. She concluded that Williams would miss more than four days of work a month and is unable to work. *Id.*

When determining a claimant's RFC, the ALJ considers medical opinions "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(a)(2), (b), 416.927(a)(2), (b); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869, 5880 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416).[6] "The ALJ must give 'controlling weight' to a treating [source's] opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and

---

[6] The Social Security Administration promulgated new rules for evaluating medical evidence effective March 27, 2017. 82 Fed. Reg. at 5844. I need not decide whether the new rules apply, because for the issues here, the new and old rules are substantively the same. I thus cite to both the old and new rules throughout this Report and Recommendation.

6

is not inconsistent with the other substantial evidence.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); 82 Fed. Reg. at 5869-70, 5880-81. The ALJ considers the following factors to determine the weight to assign an opinion assessing a claimant's RFC:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2016); 82 Fed. Reg. at 5869-70, 5880-81. "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

The ALJ gave several reasons for affording Dr. Perri's opinions little weight. Most importantly, the ALJ found that Dr. Perri's opinions were inconsistent with the record as a whole and "rel[y] on complete acceptance of the claimant's . . . self-serving symptoms and functional limitations," which the ALJ found unreliable.[7] AR 27-28. Williams contests this fact-finding, arguing that Dr. Perri relied on the medical evidence and her objective observations when forming her opinion, not Williams' subjective statements. Some of Dr. Perri's limitations may be based on her objective observations of Williams standing with a "stooped" posture and moving around constantly during her monthly check-ups. AR 877, 881, 1568, 1570. But the ALJ noted that Williams

---

[7] Williams does not challenge the ALJ's credibility determination.

presented in this manner only when being treated for back pain and seeking drugs to help her pain. AR 23. Doctors who treated Williams' vocal cords and mental health indicated that she had a normal gait and stance. AR 825, 1012, 1125, 1128. Even Dr. Perri's own treatment notes indicate that Williams could walk normally when instructed to do so and that her presentation was "rather dramatic" and "quite extraordinary compared to the numerous patients [Dr. Perri] treat[s] with chronic back pain." AR 877, 881. Substantial evidence supports the ALJ's determination that Williams exaggerated her back problems around Dr. Perri, which affected Dr. Perri's evaluation of Williams' ability to sit, stand, and walk. Moreover, other objective evidence does not support limitations as great as those imposed by Dr. Perri: Magnetic Resonance Imaging (MRI) results from October 2011 showed mild disc bulging in Williams' spine, an August 2013 MRI was "essentially negative," and other tests (e.g., straight leg raises, range of motion) mostly show no or mild restrictions. AR 726, 743, 845, 849-50, 863, 870, 1467. In addition, Dr. Perri's opinions and treatment notes explicitly state that many of the imposed limitations—including lifting, walking, sitting, bending, stooping, and twisting restrictions—are based on Williams' complaints of back pain. AR 1263, 1295, 1385, 1568, 1570. Substantial evidence supports the ALJ's determination that Dr. Perri's RFC opinions relied heavily on Williams' discredited subjective complaints, which is a "good reason" for an ALJ to discount the opinion of a treating source. *See Finch v. Astrue*, 547 F.3d 933, 936-37 (8th Cir. 2008) ("Given that the ALJ found [claimant's] subjective reports of pain not entirely credible, a [treating source's RFC] assessment based on those reports was appropriately not given substantial weight."); *see also Reece*, 834 F.3d at 909; *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *but see Papesh*, 786 F.3d at 1132-33 (holding that "the

8

ALJ offered no basis to give the [treating physician's RFC] opinion non-*substantial* weight" when the ALJ found it "based on the claimant's subjective assertions of pain").[8]

Another "good reason" given by the ALJ is that some of the limitations imposed by Dr. Perri are inconsistent with the record as a whole. *See Papesh*, 786 F.3d at 1132 (holding that the ALJ may give a treating source's RFC opinion non-substantial weight if it is "inconsistent with the record"). In addition to the previously noted inconsistencies, the ALJ found that Dr. Perri's lifting restrictions were inconsistent with Williams' ability to throw a door into a neighbor's dumpster, which she did in November 2011 (and which resulted in her being charged with illegal dumping). AR 21, 823. The ALJ also pointed to Dr. Perri's August 2012 treatment note in which she found that Williams' pain was stable on Lortab and that Williams reported being "pretty functional." AR 1387-89.

The ALJ found that Dr. Perri's RFC opinion of October 17, 2013, was inconsistent with her RFC opinion from a few months earlier. AR 28. In June 2013, Dr. Perri opined that Williams could never lift more than ten pounds and that she could not repetitively lift ten pounds or less; in October 2013, Dr. Perri opined that she could never lift ten pounds or more and that she could rarely lift less than ten pounds (a very minor inconsistency). AR 1295, 1570. She also opined in June 2013 that Williams could engage in "no repetitive lifting, stooping, bending, twisting, [or] climbing." AR 1295. In August 2013, she found that Williams could rarely twist, "stoop (bend)," or climb stairs, and never climb ladders, which is perhaps inconsistent with her June 2013 opinion. AR 1571. Although the inconsistencies between Dr. Perri's opinions are slight, the ALJ could properly consider them (along with other factors). *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("An ALJ may 'discount or even disregard the opinion of a

---

[8] In *Barton v. Berryhill*, No. 15-CV-1723-DDN, 2017 WL 878036, at *6 (E.D. Mo. Mar. 6, 2017), the court distinguished *Papesh* on the basis that the treating physician's opinion there was "consistent with the overall record" and the claimant's "credible description of her limitations, and it contradicted with only *one* other doctor's opinion" (unlike the opinion at issue in *Barton*).

9

treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000))).

With regard to Dr. Perri's findings that Williams is unable to work and that she is thus disabled, the ALJ correctly noted that she need not "adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *See Wagner*, 499 F.3d at 849 (quoting *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998)); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d); 82 Fed. Reg. at 5869, 5881. The ALJ gave good reasons, supported by substantial evidence, for affording Dr. Perri's RFC opinions little weight.

### A. *Some Medical Evidence*

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Because the ALJ did not give substantial weight to the opinions of any examining physician, Williams argues that some medical evidence does not support the ALJ's RFC determination.

Williams relies on cases where, unlike here, the record is devoid of an RFC assessment from a treating or examining doctor. *See Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). The record here contains RFC opinions from Dr. Perri, a treating source, and from Mr. Engelstad, a one-time examining psychological consultant. AR 821-26, 1263-64, 1294-

10

Case 1:16-cv-00128-LTS-KEM    Document 15    Filed 07/17/17    Page 10 of 14

95, 1568-71.  Moreover, Williams does not argue that the ALJ should have obtained additional opinion evidence (e.g., from Dr. Mittauer).  Doc. 12 at 21-22.

The ALJ gave "some weight" to the RFC opinion of Mr. Engelstad, incorporating many of Mr. Engelstad's opined limitations.  AR 21, 821-26.  Mr. Engelstad found that Williams could understand, remember, and carry out "basic and repetitive instructions."  AR 826.  Similarly, the ALJ found that Williams "can perform simple tasks."  AR 18.  Mr. Engelstad opined that Williams could not have much interaction with others and that she would "struggle to interact effectively with supervisors and coworkers."  AR 826.  Like Mr. Engelstad, the ALJ limited Williams' interactions with other people, noting that she can never work with the public and that her work with coworkers and supervisors must be "incidental."  AR 18.  Mr. Engelstad found that Williams needed to work in "an environment that is not stressful."  AR 826.  In an effort to be more precise, the ALJ found that Williams could not perform fast-paced work or work with the public, as such "factors often lead[] to a stressful work environment."  AR 18, 29.  Unlike the ALJ, however, Mr. Engelstad found Williams capable of handling money.  AR 18, 826.  Mr. Engelstad also found that Williams lacked good judgment and would struggle to adjust to workplace change, which the ALJ did not include in her RFC assessment.  *Id.*

The ALJ gave "significant weight" to the RFC opinions of the state agency medical consultants.  AR 29.  Dr. Rene Staudacher and Dr. Marlene Gernes evaluated the effect of Williams' degenerative disc disease on her physical RFC.  AR 131-35, 152-54.  Dr. Gernes also considered Williams' June 2012 vocal cord surgery and disorder but found it did not change Dr. Staudacher's previous RFC assessment.  AR 154.  Drs. Staudacher and Gernes opined that Williams can occasionally balance, crouch, stoop, kneel, crawl, climb ladders, and climb stairs.  AR 134, 152.  They found that she can occasionally lift twenty pounds and frequently lift ten pounds.  AR 133, 152.  They determined that in an eight-hour workday, Williams could sit for six hours and stand for six hours.  *Id.*

Dr. Aaron Quinn and Dr. Scott Shafer evaluated the effect of Williams' anxiety, depression, and history of alcohol abuse on her ability to function mentally and opined that Williams suffered from no marked or severe limitations. AR 132, 135-37, 151, 154-57. They found her moderately limited in the following areas: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the public; getting along with coworkers without distracting them; responding appropriately to workplace change; and setting goals and making plans independently of others. AR 135-36, 154-56. Drs. Quinn and Shafer ultimately concluded that Williams would be able to perform simple, repetitive tasks. AR 137, 157.

The state agency medical consultants evaluated the effects of the impairments that the ALJ found severe, and their RFC assessments are almost identical to the ALJ's RFC assessment. The ALJ also adopted most of the limitations found by Mr. Engelstad and conducted an independent review of the medical evidence. Accordingly, some medical evidence supports the ALJ's RFC opinion. *See Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulated his own medical opinion" when the ALJ rejected the RFC opinion of the one-time examining psychologist and instead relied on a "thorough[] review[] [of] years of medical evidence on record" to formulate an opinion "consistent with the views of . . . the reviewing agency psychologist"); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (holding that some medical evidence supported the ALJ's RFC determination when he rejected the treating source's RFC opinion and relied on the opinion of a consulting physician and an independent review of the medical evidence); *see also Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence

supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions, and at least one treating physician's physical RFC opinion was in the record but assigned non-controlling weight).

Williams relies on *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001), which is distinguishable. In that case, the claimant's treating psychiatrist and the consulting psychological examiner found that the claimant was unable to perform many work-related functions. *Id.* at 704. The ALJ did not adopt their opinions, and his decision was "unclear as to the medical basis . . . for his [RFC] assessment." *Id.* at 704-05. The Commissioner argued that the non-examining medical consultant's RFC opinion supported the ALJ, but the Eighth Circuit rejected that argument, in part because the non-examining medical consultant, "in contrast to the ALJ, . . . did not find that [the claimant] suffered from a somatoform disorder." *Id.* at 705. The court reasoned that the ALJ could not have relied on the non-examining consultant's "assessment of the limitations caused by [the claimant's] mental impairments when [the consultant] did not even agree with the ALJ as to the existence *vel non* of those impairments." *Id.* Here, by contrast, the ALJ explicitly stated the weight she was giving to each medical opinion and wrote ten pages outlining the evidence relied upon in determining RFC. AR 19-29. Unlike in *Lauer*, here, both the consulting examiner's opinion and the state agency medical consultants' opinions support the ALJ's RFC opinion. In addition, Drs. Gernes, Quinn, and Shafer evaluated the effects on Williams' RFC of the impairments found by the ALJ to be severe.

In sum, substantial evidence, including some medical evidence, supports the ALJ's RFC determination.

13

### *III. CONCLUSION*

The court recommends that the district court affirm the decision of the Social Security Administration and enter judgment in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 17th day of July, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa