**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| TAMMY WILLIAMS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | No. 16-cv-0128-LTS<br><br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

_____

## I.　INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, United States Magistrate Judge. *See* Doc. No. 15. Judge Mahoney recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Tammy Williams' application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Williams filed timely objections (Doc. No. 16) to the R&R. The Commissioner filed a response. Doc. No. 17. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.　APPLICABLE STANDARDS

### A.　*Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Williams alleged disability due to problems with her vocal cords, back, and mental health. Doc. No. 15 at 2-4. In support of her claim, Williams submitted three residual functional capacity (RFC) opinions drafted by her treating physician, Gina Perri, M.D. At issue are the ALJ's evaluation of Dr. Perri's medical opinions, and whether the ALJ's findings as to Williams' residual functional capacity (RFC) are supported by substantial medical evidence. After setting forth the relevant facts, Judge Mahoney summarized the ALJ's assessment of Dr. Perri's opinion as follows:

> The ALJ gave several reasons for affording Dr. Perri's opinions little weight. Most importantly, the ALJ found that Dr. Perri's opinions were inconsistent with the record as a whole and "rel[y] on complete acceptance of the claimant's . . . self-serving symptoms and functional limitations," which the ALJ found unreliable. AR 27-28. Williams contests this fact-finding, arguing that Dr. Perri relied on the medical evidence and her objective observations when forming her opinion, not Williams' subjective statements. Some of Dr. Perri's limitations may be based on her objective observations of Williams standing with a "stooped" posture and moving around constantly during her monthly check-ups. AR 877, 881, 1568, 1570. But the ALJ noted that Williams presented in this manner only when being treated for back pain and seeking drugs to help her pain. AR 23. Doctors who treated Williams' vocal cords and mental health indicated that she had a normal gait and stance. AR 825, 1012, 1125, 1128. Even Dr. Perri's own treatment notes indicate that Williams could walk normally

4

when instructed to do so and that her presentation was "rather dramatic" and "quite extraordinary compared to the numerous patients [Dr. Perri] treat[s] with chronic back pain." AR 877, 881. Substantial evidence supports the ALJ's determination that Williams exaggerated her back problems around Dr. Perri, which affected Dr. Perri's evaluation of Williams' ability to sit, stand, and walk. Moreover, other objective evidence does not support limitations as great as those imposed by Dr. Perri: Magnetic Resonance Imaging (MRI) results from October 2011 showed mild disc bulging in Williams' spine, an August 2013 MRI was "essentially negative," and other tests (e.g., straight leg raises, range of motion) mostly show no or mild restrictions. AR 726, 743, 845, 849-50, 863, 870, 1467. In addition, Dr. Perri's opinions and treatment notes explicitly state that many of the imposed limitations—including lifting, walking, sitting, bending, stooping, and twisting restrictions—are based on Williams' complaints of back pain. AR 1263, 1295, 1385, 1568, 1570. Substantial evidence supports the ALJ's determination that Dr. Perri's RFC opinions relied heavily on Williams' discredited subjective complaints, which is a "good reason" for an ALJ to discount the opinion of a treating source. *See Finch v. Astrue*, 547 F.3d 933, 936-37 (8th Cir. 2008) ("Given that the ALJ found [claimant's] subjective reports of pain not entirely credible, a [treating source's RFC] assessment based on those reports was appropriately not given substantial weight."); *see also Reece*, 834 F.3d at 909; *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014); *but see Papesh*, 786 F.3d at 1132-33 (holding that "the ALJ offered no basis to give the [treating physician's RFC] opinion non-substantial weight" when the ALJ found it "based on the claimant's subjective assertions of pain").

Another "good reason" given by the ALJ is that some of the limitations imposed by Dr. Perri are inconsistent with the record as a whole. *See Papesh*, 786 F.3d at 1132 (holding that the ALJ may give a treating source's RFC opinion non-substantial weight if it is "inconsistent with the record"). In addition to the previously noted inconsistencies, the ALJ found that Dr. Perri's lifting restrictions were inconsistent with Williams' ability to throw a door into a neighbor's dumpster, which she did in November 2011 (and which resulted in her being charged with illegal dumping). AR 21, 823. The ALJ also pointed to Dr. Perri's August 2012 treatment note in which she found that Williams' pain was stable on Lortab and that Williams reported being "pretty functional." AR 1387-89.

5

> The ALJ found that Dr. Perri's RFC opinion of October 17, 2013, was inconsistent with her RFC opinion from a few months earlier. AR 28. In June 2013, Dr. Perri opined that Williams could never lift more than ten pounds and that she could not repetitively lift ten pounds or less; in October 2013, Dr. Perri opined that she could never lift ten pounds or more and that she could rarely lift less than ten pounds (a very minor inconsistency). AR 1295, 1570. She also opined in June 2013 that Williams could engage in "no repetitive lifting, stooping, bending, twisting, [or] climbing." AR 1295. In August 2013, she found that Williams could rarely twist, "stoop (bend)," or climb stairs, and never climb ladders, which is perhaps inconsistent with her June 2013 opinion. AR 1571. Although the inconsistencies between Dr. Perri's opinions are slight, the ALJ could properly consider them (along with other factors). *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("An ALJ may 'discount or even disregard the opinion of a treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000))).
>
> With regard to Dr. Perri's findings that Williams is unable to work and that she is thus disabled, the ALJ correctly noted that she need not "adopt the opinion of a physician on the ultimate issue of a claimant's ability to engage in substantial gainful employment." *See Wagner*, 499 F.3d at 849 (quoting *Qualls v. Apfel*, 158 F.3d 425, 428 (8th Cir. 1998*)); see also* 20 C.F.R. §§ 404.1527(d), 416.927(d); 82 Fed. Reg. at 5869, 5881.

Doc. No. 15 at 7-10. Judge Mahoney determined that the ALJ gave good reasons, supported by substantial evidence, for affording little weight to Dr. Perri's medical. *Id.* at 10.

Turning to the evaluation of the medical evidence, Judge Mahoney outlined the ALJ's opinion as follows:

> The ALJ gave "some weight" to the RFC opinion of Mr. Engelstad, incorporating many of Mr. Engelstad's opined limitations. AR 21, 821-26. Mr. Engelstad found that Williams could understand, remember, and carry out "basic and repetitive instructions." AR 826. Similarly, the ALJ found that Williams "can perform simple tasks." AR 18. Mr. Engelstad opined that Williams could not have much interaction with others and that she would "struggle to interact effectively with supervisors and coworkers."

6

AR 826. Like Mr. Engelstad, the ALJ limited Williams' interactions with other people, noting that she can never work with the public and that her work with coworkers and supervisors must be "incidental." AR 18. Mr. Engelstad found that Williams needed to work in "an environment that is not stressful." AR 826. In an effort to be more precise, the ALJ found that Williams could not perform fast-paced work or work with the public, as such "factors often lead[] to a stressful work environment." AR 18, 29. Unlike the ALJ, however, Mr. Engelstad found Williams capable of handling money. AR 18, 826. Mr. Engelstad also found that Williams lacked good judgment and would struggle to adjust to workplace change, which the ALJ did not include in her RFC assessment. *Id.*

The ALJ gave "significant weight" to the RFC opinions of the state agency medical consultants. AR 29. Dr. Rene Staudacher and Dr. Marlene Gernes evaluated the effect of Williams' degenerative disc disease on her physical RFC. AR 131-35, 152-54. Dr. Gernes also considered Williams' June 2012 vocal cord surgery and disorder but found it did not change Dr. Staudacher's previous RFC assessment. AR 154. Drs. Staudacher and Gernes opined that Williams can occasionally balance, crouch, stoop, kneel, crawl, climb ladders, and climb stairs. AR 134, 152. They found that she can occasionally lift twenty pounds and frequently lift ten pounds. AR 133, 152. They determined that in an eight-hour workday, Williams could sit for six hours and stand for six hours. *Id.*

Dr. Aaron Quinn and Dr. Scott Shafer evaluated the effect of Williams' anxiety, depression, and history of alcohol abuse on her ability to function mentally and opined that Williams suffered from no marked or severe limitations. AR 132, 135-37, 151, 154-57. They found her moderately limited in the following areas: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the public; getting along with coworkers without distracting them; responding appropriately to workplace change; and setting goals and making plans independently of others. AR 135-36, 154-56. Drs. Quinn and Shafer ultimately concluded that Williams would be able to perform simple, repetitive tasks. AR 137, 157. The state agency medical consultants evaluated the effects of the impairments that the ALJ found severe, and their RFC assessments are almost identical to the

7

> ALJ's RFC assessment. The ALJ also adopted most of the limitations found by Mr. Engelstad and conducted an independent review of the medical evidence. Accordingly, some medical evidence supports the ALJ's RFC opinion. *See Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (rejecting claimant's argument that the ALJ "formulated his own medical opinion" when the ALJ rejected the RFC opinion of the one-time examining psychologist and instead relied on a "thorough[] review[] [of] years of medical evidence on record" to formulate an opinion "consistent with the views of . . . the reviewing agency psychologist"); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (holding that some medical evidence supported the ALJ's RFC determination when he rejected the treating source's RFC opinion and relied on the opinion of a consulting physician and an independent review of the medical evidence); *see also Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (finding some medical evidence supported the ALJ's physical RFC determination when it was consistent with the state agency medical consultants' opinions, and at least one treating physician's physical RFC opinion was in the record but assigned non-controlling weight).

Doc. No. 15 at 11-13. Judge Mahoney found that the ALJ properly weighed and considered the medical opinions of Drs. Perri, Staudacher, Gernes, Quinn, and Shafer, as well as Mr. Englestad, a certified school psychiatrist who examined Williams once. *Id.* at 13. Judge Mahoney noted that the state agency medical consultants evaluated each of the impairments that the ALJ found severe, and that their RFC assessments were consistent with the ALJ's. *Id.* at 12. Additionally, Judge Mahoney observed that the ALJ adopted most of the limitations recommended by Mr. Engelstad and that the ALJ conducted an independent review of the medical evidence. *Id.* Judge Mahoney found that substantial medical evidence in the record as a whole supported the ALJ's findings. *Id.* at 13.

## IV.   DISCUSSION

### A.   *Williams' Objections*

Williams objects to Judge Mahoney's findings that (1) the ALJ properly weighed the medical opinions of Dr. Perri and (2) the ALJ's RFC is supported by substantial medical evidence.   I review those issues de novo.

### B.   *Dr. Perri's Medical Opinions*

Williams argues that the ALJ failed to give proper weight to Dr. Perri's medical opinions regarding Williams' RFC.  Williams argues that Dr. Perri's opinions were materially different from those of the state agency consultants and consistent with the medical record as a whole.  Doc. No. 12 at 10-13.  An opinion by a treating physician must be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); 82 Fed. Reg. at 5869-70, 5880-81.  The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). Based on my de novo review, I find no error.

Dr. Perri provided three medical opinions regarding Williams' RFC.  In a letter dated August 30, 2012, Dr. Perri opined that "Williams suffers from multiple medical problems and . . . [will not] be able to return to the workforce."  AR at 1263.  Dr. Perri went on to describe Williams' diagnoses, symptoms, and limitations:

> She has chronic low back pain and has undergone a thorough evaluation for that.  She is really not suited to bend, stoop, kneel, or crawl. She can only walk about half a block and then she has to stop because of pain and shortness of breath . . . .  She sees a psychiatrist for chronic anxiety and is limited in what she can handle in terms of stress.  She cannot work in any stressful environments including dust, fumes, temperature hazards

9

> due to her asthma. She has moderately severe problems in speaking with chronic hoarse voice and has undergone surgery on her vocal cord nodules, speech therapy, and has a permanent, pretty significant hoarse voice . . . .
>
> Given this patient's mental conditions and limited education, severe anxiety, chronic pain and medications used to treat chronic pain is not really able to follow instructions all that well. Throughout her life she has made poor decisions. I do not think she is going to be able to interact in the workplace gainfully with the public whatsoever or her coworkers. She does not demonstrate good judgment though I think she could give an attempt to deal with her own finances, although that may be even questionable somewhat as well.
>
> On today's exam she is constantly moving about the room, voice is hoarse, stands up bent over, thoughts are scattered, etc.

AR at 1263-64. In forms dated June 10, 2013, and October 17, 2013, Dr. Perri provided the ALJ with substantially similar information. AR at 1294-96, 1568-71. Judge Mahoney found minor inconsistencies between the specific limitations imposed by Dr. Perri (Doc. No. 15 at 9-10), but none of these are significant to the determination. In addition to these opinions, the ALJ reviewed extensive medical records regarding Williams' treatment in Dr. Perri's office dating back to January 2011. AR at 729-819, 872-1007, 1196-1252, 1262-64, 1294-96, 1320-1446, 1460-68, 1501-03, 1565-71. The ALJ reviewed these records in the context of the record as a whole. AR at 27-28.

The ALJ afforded Dr. Perri's opinions "little weight," finding the medical record does not support the work limitations she endorsed. AR at 27-28. Specifically, the ALJ stated that Dr. Perri's opinions were inconsistent with the record as a whole, and "rel[y] on complete acceptance of the claimant's . . . self-serving symptoms and functional limitations," which the ALJ also found to be unreliable. *Id.* Like Judge Mahoney, I find that substantial evidence supports the ALJ's finding that Dr. Perri relied heavily on Williams' subjective behaviors over other, objective evidence as to the extent of Williams' disability. Moreover, like Judge Mahoney, I find that Dr. Perri's reliance on

Williams' discredited subjective complaints is a "good reason" for an ALJ to discount the opinion of a treating source. *See Finch*, 547 F.3d at 936-37, *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016); *Julin v. Colvin*, 826 F.3d 1082, 1085, 1089 (8th Cir. 2016); *Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014). *But see Papesh*, 786 F.3d at 1132-33 (ALJ erred in discounting treating doctor's opinions because they were based on plaintiff's subjective behaviors, where ALJ did not find that the treating doctor's opinions were inconsistent with the record as a whole).

Although there is some medical evidence to support Dr. Perri's diagnoses, the limitations drawn from these diagnoses are inconsistent with the objective findings by Williams' other treating physicians and the state agency medical consultant. AR at 131-35, 152-54. Ultimately, claimant bears the burden to demonstrate her disability. *See Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004). The record as a whole indicates that Williams was not a reliable source of information for her own limitations. Her subjective presentation of her symptoms was described as "rather dramatic" and "quite extraordinary compared to the numerous patients I treat with chronic back pain." AR at 881. Dr. Perri observed Williams "twitching with spasms a fair amount," but stated that it was "[h]ard to say whether [the twitching] is volitional or not" and that the twitching was "somewhat dramatic." AR at 885.

When seeking pain medication, Williams constantly and restlessly paced the room, "bent over," yet she could stand and walk straight when instructed to do so. AR at 877, 881. Doctors did not observe these problems when Williams was seeking treatment for her vocal cord or mental health issues. AR at 825, 10012, 1125, 1128. Williams objects that the silence of her physicians on this behavior is not dispositive. *See Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (ALJ may not find inconsistencies in the record based solely on physicians' silence, where physicians were not treating claimant's back pain); *Howard v. Astrue*, No. 4:10 CV 1389 JCH, 2011 WL 4007936 at *7 (E.D. Mo. Sept. 8, 2011) (ALJ may not base functional determination "solely on the silence of

claimant's physicians"); *Freeman v. Astrue*, Civ. No. 10-2094, 2011 WL 2600636 at *3 (W.D. Ark. June 30, 2011) (ALJ may not consider "a treating doctor's silence on the claimant's work capacity" as substantial evidence where "the doctor was not asked to express an opinion on the matter and did not do so."). However, the silence of Williams' other physicians is not the only factor that the ALJ considered in discounting Dr. Perri's opinions. The medical record shows repeated "normal" or "negative" objective observations related to Williams' back pain and back and extremity strength. AR at 583, 587, 595, 608, 641, 652, 684, 702, 709, 713, 743, 751, 756, 766, 859, 896, 1001, 1328. Williams' drug-seeking behavior is also well-documented. On multiple occasions, Williams went to the emergency room asking for specific pain-killers, telling the emergency room staff that her doctor was out of town or otherwise unavailable, in spite of signing a pain contract agreeing to seek pain relief only from Dr. Perri. AR at 705-06, 774, 844-48, 870, 887-91, 1081.

Objective imaging of Williams' spine shows only "[m]ild disk bulging at L4-L5 and to a lesser at L3-L4. Otherwise unremarkable MR lumbar spine." AR at 726. Williams' described limitations are inconsistent with the fact that she threw a door into a neighbor's dumpster. AR at 823. Each of these inconsistencies—the negative objective findings, the drug-seeking behavior, and the disparity between the severity of Williams' degenerative disc disease, alleged limitations, and actions—distinguish Williams' case from *Taylor*. In *Taylor*, the silent records were not inconsistent because the physicians "made no attempt to catalog [the claimant's] every pain and her behavior resulting from the pain." 118 F.3d at 1278. Contrary to *Taylor,* Williams' physicians' reports ranged from silent to negative to careful attempts to catalogue Williams' pain, out of fear that she was seeking addictive narcotics.

The state agency doctors whose opinions the ALJ gave greater weight took all of this information into account, including the limited positive findings of degenerative disc disease, and reached RFC opinions inconsistent with Dr. Perri's. AR at 131-35, 152-54.

In light of these inconsistencies, the ALJ did not err in discounting Dr. Perri's medical opinions and finding that Williams had a greater RFC than reported by Dr. Perri. I find no error with the ALJ's finding. Williams' objection is overruled.

## C. *The RFC Assessment*

Williams also argues that the ALJ's RFC assessment is not supported by substantial medical evidence. Williams contends the RFC is flawed because it is not supported by any treating or examining source, suggesting that the ALJ failed to fully develop the record. I disagree.

The ALJ found that Williams had the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). Specifically:

> The claimant can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours in a workday. She can sit, with normal break, for a total of six hours in a workday. The claimant can balance, crouch, stoop, kneel, crawl, and climb occasionally. The claimant can perform simple tasks. She can work with co-workers and supervisors on an incidental basis. She cannot work with the public. She cannot perform fast-paced work. The claimant is not able to do telephone work. She should not manage money or drive.

AR at 18. In reaching this conclusion, the ALJ considered all medical opinions according to 20 C.F.R. § 404.1527 and § 416.927, in addition to Social Security Ruling 96-2p, Ruling 96-5p, Ruling 96-6p, and Ruling 06-3p. *Id.* The ALJ weighed the nature and length of each treating relationship, their areas of specialty, and the findings supporting their opinions. *Id.* Ultimately, the matter of a claimant's RFC is an issue reserved for the ALJ. *Wagner*, 499 F.3d at 849 *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ's RFC determination must be supported by substantial evidence, which includes medical evidence, that is to say the ALJ may not ordinarily make an RFC determination without the benefit of opinion evidence from a treating source.

13

*Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000); *Fitzgerald Morris v. Colvin*, No. C14-4068-LTS, 2016 WL 3360506 at *8-9 (N.D. Iowa June 16, 2016). However, as this court has explained, "ordinarily" does not mean "never": "[I]f other medical evidence in the record clearly establishes a claimant's RFC to do other work, and to function in the workplace, the absence of an opinion from examining physicians may not require remand." *Kruger v. Colvin*, No. C13–3036–MWB, 2014 WL 1584411, at *10 (N.D. Iowa Apr. 21, 2014) (citing *Nevland*, 204 F.3d at 858; *Hattig v. Colvin*, No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013)). The question is whether the lack of opinion evidence from a treating or examining source is overcome by other medical evidence that clearly establishes the claimant's RFC. *Fitzgerald Morris*, 2016 WL 3360506 at *10.

I find that the ALJ's RFC determination was consistent with, and fully accounted for, work limitations supported by substantial evidence. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding the ALJ's residual functional capacity assessment was supported by substantial evidence, noting that it was consistent with the limitations identified by the reviewing consultant). Further, regardless of Dr. Perri's RFC opinion, this is not a *Nevland* case in which the ALJ inferred her own medical opinions without the benefit of an appropriate medical source. Instead, the ALJ did have the benefit of opinion evidence from a treating source, and relied at least in part on Dr. Perri's objective findings, as well as the objective findings of other physicians in Williams' medical record. Finally, I find that the lack of a substantially weighted medical opinion regarding RFC is overcome in this case by other objective medical evidence that clearly establishes Williams' mental and physical RFC. *Fitzgerald Morris*, 2016 WL 3360506 at *10.

The ALJ's reliance on the state agency consultants' opinions provided substantial evidence for the ALJ's RFC assessment. *See Buford*, 824 F.3d at 797 (finding that the ALJ did not have to obtain "an opinion from a treating or consultative doctor as to

Buford's work related limitations" because "medical assessments of state agency medical consultants as to Buford's limitations are of record and were expressly considered by the ALJ."). An ALJ's RFC findings do not need to "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Here, the ALJ relied upon the reports of Mr. Englestad and Drs. Quinn and Shafer as to Williams' mental impairments, and relied on Drs. Staudacher's and Gernes' evaluations regarding the effects of Williams' degenerative disc disease on her physical RFC. AR at 18, 21, 29. Drs. Staudacher and Gernes gave some weight to Dr. Perri's opinions, and relied on the objective findings of back pain and other medical impairments to determine the extent of Williams' physical limitations. Indeed, the ALJ would not have found limitations in lifting, standing, and walking without those opinions. However, as stated above, the ALJ properly discounted portions of the medical evidence that went to the *extent* of Williams' physical limitations because they were based on Williams' unsupported subjective complaints.

Based on my de novo review, I find the RFC is supported by substantial evidence. Williams' objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Plaintiff Tammy I. Williams' objections (Doc. No. 16) to the Report and Recommendation are **overruled**.

2. I **accept** United States Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation (Doc. No. 15) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Mahoney's recommendation:

   a. The Commissioner's determination that Williams was not disabled is **affirmed**; and

15

b. Judgment shall enter against Williams and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 16th day of August, 2017.

_____
Leonard T. Strand, Chief Judge